1
2
3
4
5
6
7
8                    **UNITED STATES DISTRICT COURT**

9                   **CENTRAL DISTRICT OF CALIFORNIA**

10
11
12
13   FEDERATION OF TELUGU        )   CV 14-1278 RSWL (ASx)
     ASSOCIATIONS OF SOUTHERN    )
14   CALIFORNIA, a California    )   **ORDER Re: PLAINTIFF'S**
     Corporation                 )   **MOTION FOR DEFAULT**
15                               )   **JUDGMENT AGAINST**
                                 )   **DEFENDANT TELUGU**
16                Plaintiff,     )   **ASSOCIATION OF SOUTHERN**
                                 )   **CALIFORNIA** [140]
17        v.                     )
                                 )
18   TELUGU ASSOCIATION OF       )
     SOUTHERN CALIFORNIA, a      )
19   California corporation,     )
                                 )
20                Defendant.     )
     _____)

21        Now before this Court is Plaintiff Federation of

22   Telugu Associations of Southern California's

23   ("Plaintiff") Motion for Default Judgment against

24   Defendant Telugu Association of Southern California

25   [140].  In the present Motion, Plaintiff seeks entry of

26   default judgment and requests entry of a permanent

27   injunction against Defendant Telegu Association of

28   Southern California ("Defendant" or "TASC").

                                   1

1                       **I.    BACKGROUND**

2   **A.   <u>Factual Background</u>**

3        Plaintiff is a California corporation, with its

4   principal place of business in Upland, California.

5   Second Am. Compl. ("SAC") ¶ 4, ECF No. 72.  Defendant

6   is a California corporation, with its principal place

7   of business in Artesia, California.  <u>Id.</u> at ¶ 5.

8   Plaintiff is the owner of the following federally

9   registered trademark and trade name "Telugu Association

10  of Southern California," and is incorporated under this

11  trade name.  <u>Id.</u> at ¶ 7.  Plaintiff has used this trade

12  name in interstate commerce since December 31, 2002, in

13  connection with 1) charitable services, namely,

14  promoting public awareness of the Telugu language and

15  culture, and 2) organizing and hosting events for

16  cultural and educational purposes.  <u>Id.</u> at ¶ 8.

17  Plaintiff's members and officers reside throughout the

18  United States.  <u>Id.</u> at ¶ 9.

19       In February 2014, Defendant began using Plaintiff's

20  trademark / trade name in connection with Defendant's

21  services.  <u>Id.</u> at ¶ 12.  On March, 13, 2014, when the

22  California Franchise Tax Board suspended Plaintiff's

23  corporate standing for a period of about six months,

24  Plaintiff changed its corporate name to "Federation of

25  Telegu Associations of Southern California."  <u>Id.</u>;

26  Declaration of Mallik Banda ("Banda Decl.") ¶ 2, ECF

27  No. 14.  While Plaintiff was suspended, Defendant

28  incorporated itself under Plaintiff's trademark / trade

                                2

name.  SAC ¶ 12.  However, during its corporate
suspension, Plaintiff continued to use its trademark /
trade name.  Defendant's services consist of 1)
charitable services, such as promoting public awareness
of the Telegu language and culture, and 2) organizing
and hosting events for cultural and educational
purposes.  <u>See</u> SAC Exs. 3-4.

**B.  <u>Procedural Background</u>**

On June 23, 2014, Plaintiff filed its Complaint [1]
for injunctive and monetary relief, alleging violations
of the Lanham Act as well as unfair competition under
the California Business and Professions Code against
Defendants TASC and Nagesh Ankam.  On July 7, 2014, the
Complaint was served on Defendants [9].  On August 5,
2014, Plaintiff requested that the clerk of court enter
default against Defendant TASC [10].  On August 7,
2014, the clerk entered default against TASC [11].  On
October 15, 2014, Plaintiff filed a Motion for Default
Judgement against TASC [14].  On October 15, 2014,
Defendant TASC filed a Motion to Set Aside Default
[15].  On February 10, 2015, the Court granted
Defendant TASC's Motion to Set Aside Default, and thus
denied as moot Plaintiff's Motion for Default Judgment
[28].

On June 29, 2015, Plaintiff filed its Second
Amended Complaint ("SAC") against Defendants [72].  On
August 4, 2015, Wolf & Levine, LLP ("Defense Counsel")
filed a Motion to Withdraw as Counsel for Defendant

Telugu Association of Southern California [93]. Upon a finding of good cause and a determination that Defense Counsel complied with the applicable Local Rules, this Court granted Defense Counsel's Motion to Withdraw [123]. In doing so, the Court ordered Defense Counsel to file proof of service, containing Defendant TASC's last known contact information, that the Court's Order [123] was properly served upon TASC. The Court further ordered TASC to obtain permanent counsel within thirty days of the Court's Order, and file proof of service as to its new counsel.

On December 3, 2015, this Court ordered Defendant TASC to show cause as to why it failed to comply with this Court's previous Order [137]. The Court advised and cautioned TASC that it had until December 15, 2015 to provide the Court with proof of permanent counsel. TASC was advised that a failure to respond to this Order to Show Cause may lead to the imposition of sanctions, including placing TASC in default.

On November 04, 2015, the Court granted the parties' stipulation to Dismiss Defendant Nagesh Ankam [135], with only Defendant TASC (hereinafter "Defendant") remaining. On December 17, 2015, upon Defendant's failure to provide proof of permanent counsel, the Clerk entered default against Defendant [139]. Plaintiff now brings the instant Motion for Default Judgment [140].

/

## II.  DISCUSSION

### A.  Legal Standard

Default judgment is within the discretion of the district court.  <u>Aldabe v. Aldabe</u>, 616 F.2d 1089, 1092 (9th Cir. 1980); <u>see</u> Fed. R. Civ. P. 55.  A party applying to the Court for default judgment must satisfy both procedural and substantive requirements.

Procedurally, the requirements set forth in Federal Rules of Civil Procedure Rules 55 and 56, and Local Rule 55-1 must be met.  <u>See</u> <u>Vogel v. Rite Aid Corp.</u>, 992 F. Supp. 2d 998, 1006 (C.D. Cal 2014).  Local Rule 55-1 provides: "When an application is made to the Court for a default judgment, the application shall be accompanied by a declaration in compliance with Fed. R. Civ. P. 55(b)(1) and/or (2) and include the following: (a) When and against what party the default was entered; (b) The identification of the pleading to which default was entered; (c) Whether the defaulting party is an infant or incompetent person, and if so, whether that person is represented by a general guardian, committee, conservator or other representative; (d) That the Service Members Civil Relief Act, 50 U.S.C. App. § 521, does not apply; and (e) That notice has been served on the defaulting party, if required by Federal Rule of Civil Procedure 55(b)(2)."  L.R. 55-1.

Substantively, the Ninth Circuit has directed that courts consider the following factors, referred to as

5

the <u>Eitel</u> factors in deciding whether to enter default judgment: "(1) the possibility of prejudice to plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action, (5) the possibility of a dispute concerning the material facts, (6) whether defendant's default was the product of excusable neglect, and (7) the strong public policy favoring decisions on the merits." <u>See</u> <u>Vogel</u>, 992 F. Supp. 2d at 1005; <u>see also</u> <u>Eitel v. McCool</u>, 782 F.2d 1470, 1471071 (9th Cir. 1986). Additionally, "[w]hen entry of judgment is sought against a party who has failed to plead or otherwise defend , a district court has an affirmative duty to look into its jurisdiction over both the subject matter and the parties." <u>In re Tuli</u>, 172 F.3d 707, 712 (9th Cir. 1999).

In analyzing these factors, the Court may base its judgment entirely upon the affidavits submitted by the parties. <u>Davis v. Fendler</u>, 650 F.2d 1154, 1161 (9th Cir. 1981). If the Court determines that the defendant is in default, "'the factual allegations of the complaint, other than those relating to damages, are taken as true.'" <u>Televideo Sys., Inc. v. Heidenthal</u>, 826 F.2d 915, 917-918 (9th Cir. 1987) (quoting <u>Geddes v. United Fin. Group</u>, 559 F.2d 557, 560 (9th Cir. 1977)). Additionally, "[w]hen entry of judgment is sought against a party who has failed to plead or otherwise defend, a district court has an affirmative

6

duty to look into its jurisdiction over both the subject matter and the parties." <u>In re Tuli</u>, 172 F.3d 707, 712 (9th Cir. 1999).

**B. <u>Analysis</u>**

Plaintiff seeks entry of default judgment against Defendant for failure to respond or otherwise defend itself in this matter. <u>See generally</u> Mot. for Default J. ("Mot."), ECF No. 140. For the reasons set forth below, the Court **GRANTS** Plaintiff's Motion.

1. <u>Jurisdiction and Service of Process are Proper</u>

In considering whether to enter default judgment against a party for failing to plead or otherwise defend himself in an action, a district court must first determine whether it has jurisdiction over the subject matter and the parties to the case. <u>In re Tuli</u>, 173 F.3d 707, 712 (9th Cir. 1999).

Generally, a defect in personal jurisdiction is a defense that must be asserted or waived by a party. <u>Id.</u> (citing Fed. R. Civ. P. 12(h)(1)). However, when a court is considering whether to enter default judgment, the court may dismiss the action *sua sponte* for lack of personal jurisdiction, for a "judgment entered without personal jurisdiction over the parties is void." <u>Id.</u> This court should find that service of process was proper, and the Court has jurisdiction over the parties and the subject matter in this action.

a. *Personal jurisdiction*

In states where no applicable federal statute

7

governs personal jurisdiction, that state's long-arm
statute applies.  See Panavision Int'l, L.P. v.
Toeppen, 141 F.3d 1316, 1320 (9th Cir. 1998).  The
exercise of personal jurisdiction over a nonresident
defendant requires the presence of two factors: (1)
California's laws must provide a basis for exercising
personal jurisdiction, and (2) the assertion of
personal jurisdiction must comport with due process.
Hirsch v. Blue Cross, Blue Shield of Kansas City, 800
F.2d 1474, 1477 (9th Cir. 1986).  California's long arm
statute permits the exercise of personal jurisdiction
to the fullest extent permitted by due process.  See
Cal. Civ. Proc. Code § 410.10; Panavision, 141 F.3d at
1320.  "Because California's long-arm jurisdictional
statute is coextensive with federal due process
requirements, the jurisdictional analyses under state
law and federal due process are the same."
Schwarzeneggar v. Fred Martin Motor Co., 374 F.3d 797,
800-01 (9th Cir. 2004).  Thus only a due process
analysis is required here.

  Due process requires that a defendant have "certain
minimum contacts with [the forum state] such that the
maintenance of the suit does not offend traditional
notions of fair play and substantial justice."  Int'l
Shoe Co. v. Washington, 326 U.S. 310, 316 (1945)
(internal quotations marks omitted).  Depending on the
nature and scope of the defendant's contacts with the
forum, jurisdiction may be general or specific to a

cause of action. <u>Roth v. Garcia Marquez</u>, 942 F.2d 617, 620 (9th Cir. 1991). When a defendant's contacts with the forum state are "substantial" or "continuous and systematic," general jurisdiction may be exercised over that defendant for any cause of action, even if it is unrelated to the defendant's activities with the forum state. <u>Schwarzeneggarm</u>, 374 F.3d at 801-02; <u>Data Disc, Inc. v. Sys. Tech. Assocs.</u>, 557 F.2d 1280, 1287 (9th Cir. 1977). This Court finds it has personal jurisdiction over all parties. Defendant is a California corporation with its principal place of business in Artesia, California, SAC ¶ 5, thus this Court has general jurisdiction over Defendant.

      b. *Subject matter jurisdiction*

This Court finds it has subject matter jurisdiction over the matter, as Plaintiff's claims for trademark infringement, trade name infringement, and false designation of origin arise under the Lanham Act. <u>See</u> SAC, ECF No. 72; 15 U.S.C § 1125(a). This Court has pendent jurisdiction over Plaintiff's unfair competition claim pursuant to 28 U.S.C. section 1367. Furthermore, under 28 U.S.C. § 1338(a), this Court "shall have original jurisdiction of any civil action arising under any Act of Congress relating to ... trademarks." 28 U.S.C. § 1338(a). This court thus has original jurisdiction over this matter as the Court has jurisdiction of "any civil action asserting a claim of unfair competition when joined with a substantial and

related claim under the . . . trademark laws." 28 U.S.C. § 1338(b).

c. *Service of process*

This Court finds Plaintiff has proffered the requisite Proofs of Service [1, 6, 9, 140]. The Proofs of Service show Defendant was properly served with the Summons, Complaint, Clerk's Entry of Default, and the present Motion, and thus service of process is complete and proper.

2. <u>Plaintiff has Satisfied the Procedural Requirements for Default Judgment</u>

This Court finds Plaintiff has met all of the procedural requirements for entry of default judgment. Plaintiff's application includes the identity of the party that default was entered against, Defendant Telegu Association of Southern California, and when default was entered against Defendant. Declaration of Michael Shimokaji ("Shimokaji Decl.") ¶ 2, ECF No. 140-1. Furthermore, Plaintiff's application identifies the pleading to which default was entered, the Second Amended Complaint. <u>Id.</u> As Defendant is a corporation, it is neither an infant or incompetent person, nor subject to the Servicemembers Civil Relief Act. <u>See</u> Shimokaji Decl. ¶¶ 3-4. Additionally, Plaintiff has sufficiently established the seven <u>Eitel</u> factors, thus satisfying the substantive requirements for entry of default judgment.

3. <u>Plaintiff has Satisfied the Substantive</u>

Requirements for Default Judgment

a.  *Risk of prejudice to Plaintiff*

The first Eitel factor "considers whether plaintiff will suffer prejudice if default judgment is not entered." Tate v. Molina, 2015 U.S. Dist. LEXIS 3607 (C.D. Cal. Jan. 9, 2015).  This Court finds Plaintiff would be prejudiced if default judgment was not entered.

Currently, Defendant is not represented through licensed counsel.  See Declaration of Sarah R. Wolk ("Wolk Decl.") ¶ 2, ECF No. 93.  Defendant is a corporation and cannot appear *pro se.*  See Rowland v. California Men's Colony, Unit II Men's Advisory Council, 506 U.S. 194, 202 (1993).  Since Defense Counsel withdrew their representation of Defendant, and Defendant subsequently failed to provide the Court with proof of new permanent counsel, this Court struck Defendant's Answer to Plaintiff's SAC and placed Defendant in default [138].  Since Defendant was placed in default on December 17, 2015 [139], Defendant has neither obtained permanent counsel, nor responded to Plaintiff's Motion for Default Judgment in any way.

Plaintiff argues that in the absence of a default judgment awarding injunctive relief, Defendant will be free to continue its infringement and acts of unfair competition.  Mot. 2:24-25.  Further, as Defendant cannot yet appear in this litigation due to lack of representation, Plaintiff would be denied its right to

11

judicial resolution of its claim if default judgment were not entered.  <u>Electra Entm't Grp. Inc. v. Crawford</u>, 226 F.R.D. 388, 392 (C.D. Cal. 2005) (holding "plaintiff would suffer prejudice if default judgment is not entered because plaintiff 'would be denied the right to judicial resolution of the claims presented, and would be without other recourse for recovery.'"). Accordingly, this factor weighs in favor of entry of default judgment.

   b. *The merits of Plaintiff's substantive*
     *claims and sufficiency of the Complaint.*

  The second and third <u>Eitel</u> factors consider the merits of Plaintiff's substantive claims and the sufficiency of the complaint.  "Under an [<u>Eitel</u>] analysis, [these factors] are often analyzed together." <u>Tate</u>, 2015 U.S. Dist. LEXIS 3607 at *5 (quoting <u>Dr. JKL Ltd. v. HPC IT Educ. Ctr.</u>, 749 F.Supp.2d 1038, 1048 (N.D. Cal. 2010)).  "These two factors require a plaintiff to 'state a claim on which the [plaintiff] may recover."  <u>Id.</u> (quoting <u>Danning v. Lavine</u>, 572 F.2d 1386, 1388 (9th Cir. 1978)).

   i. *Plaintiff has asserted a meritorious*
     *claim for Federal Trademark*
     *Infringement.*

  Plaintiff's first claim against Defendant alleges federal trademark infringement in violation of the Lanham Act, 15 U.S.C. 1125(a).  Mot. 1:27.  To prevail on such a claim, Plaintiff must establish that the

12

"trademark infringer's use of [its] mark creates a likelihood that the consuming public will be confused as to who makes the product." <u>Jada Toys, Inc. v. Mattel, Inc.</u>, 518 F.3d 628, 632 (9th Cir. 2008).

In order to prevail on a suit under § 1125(a) of the Lanham Act, a plaintiff must prove two basic elements: (1) it has a valid, protectable trademark or trade name, and (2) [the defendant's] use of the mark is likely to cause confusion. <u>Southern Ca. Darts Ass'n v. Zaffina</u>, 762 F.3d 921, 929 (9th Cir. 2014) (citing <u>Applied Info. Sciences Corp. v. eBAY, Inc.</u>, 511 F.3d 966, 969 (9th Cir. 2007).

### 1. *Whether the Trademark / Trade Name is Valid and Protectable*

In regards to the first element, it is comprised of two sub-parts: the mark's protectability and the plaintiff's ownership of the mark. <u>So. Ca. Darts</u>, 762 F.3d. at 929. Whether a mark is protectable depends on its degree of "distinctiveness." <u>Id.</u> There are five traditional categories of distinctiveness: (1) generic, (2) descriptive, (3) suggestive, (4) arbitrary, or (5)fanciful. <u>Id.</u> (citing <u>Two Pesos, Inc. v. Taco Cabana, Inc.</u>, 505 U.S. 763, 768 (1992). Furthermore, descriptive marks, such as Plaintiff's mark here, become protectable if they acquire a "secondary meaning," by becoming distinctive "as used on or in

13

connection with the applicant's goods in commerce." Id.; 15 U.S.C. § 1052(f).   Whether a secondary meaning exists requires the consideration of several factors: (1) whether consumers associate the product with the trademark owner, (2) the extent of advertisement by the trademark owner, (3) the length of time of use by the trademark owner, and (4) the owner's exclusive use of the trademark.   Japan Telecom v. Japan Telecom, 287 F.3d 866, 873 (9th Cir. 2002).

Here, this Court finds Plaintiff's trademark / trade name is valid and protectable.   Plaintiff is the sole owner of the trademark and trade name, registered as federal trademark No. 4,634,567 on November 4, 2014. SAC ¶ 7; see SAC Ex. 1.   Plaintiff has advertised and used its trademark/trade name since at least 2002. Mot. 4:15-16; SAC ¶ 8.   Plaintiff incorporated itself about thirty years before Defendant incorporated itself under Plaintiff's trademark/trade name.   Mot. 4:8-9; SAC ¶ 4, 5.   Plaintiff has continuously used Plaintiff's trademark and has never abandoned it.   Mot. 4:9-11; SAC ¶ 7-8, 13; Banda Decl. ¶ 2, ECF No. 14. Plaintiff has never consented to Defendant's use of Plaintiff's trademark.   SAC ¶ 13-14, 17-18.   Until Defendant's use of Plaintiff's trademark/trade name, Plaintiff believes it was the exclusive user of the trademark/trade name throughout the United States. Mot. 4:22-24; SAC ¶ 7.   Furthermore, under California Business and Professions Code section 14415, a

14

presumption has existed since 1983 that Plaintiff has the exclusive right to use Plaintiff's trademark/trade name. SAC ¶ 13. Based on the analysis of the factors above, this Court finds Plaintiff's trademark / trade name has a secondary meaning and is thus protectable.

Additionally, "proof of exact copying, without opposing proof, can by itself establish secondary meaning." So. Ca. Darts 762 F.3d at 929. Here, Defendant has been using Plaintiff's trademark / trade name: 1) without variation of the mark (exact copying), 2) in the same marketing channel as Plaintiff – a website, and 3) for the same services Plaintiff offers – charitable services to promote the Telegu language and culture. Mot. 4:25-28; SAC ¶ 12; Banda Decl. ¶ 6. Thus for this additional reason, Plaintiff has shown that Plaintiff's trademark/trade name has acquired a secondary meaning and, accordingly, is protectable.

2.    *Whether Defendant's Use is Likely to Cause Confusion*

In regards to the second element, Plaintiff must show that Defendant's infringing use would likely cause consumer confusion. Southern Ca. Darts Ass'n, 762 F.3d at 929. Generally, courts apply a "likelihood of confusion" test that asks whether use of the plaintiff's trademark by the defendant is "likely to cause confusion or to cause mistake, or to deceive as to the affiliation, connection, or association" of the two products. Mattel, Inc. v. Walking Mountain Prods.,

353 F.3d 792, 806-07 (9th Cir. 2003).

The factors assessed in determining a "likelihood of confusion" are: (1) the strength of the mark; (2) proximity of the goods; (3) similarity of the marks; (4) evidence of actual confusion; (5) marketing channels used; (6) type of goods and the degrees of care likely to be exercised by the purchaser; (7) defendant's intent in selecting the mark; and (8) likelihood of expansion of the product lines. <u>AMF Inc. v. Sleekcraft Boats</u>, 599 F.2d 341, 348-49 (9th Cir. 1979), <u>abrogated in part on other grounds by</u> <u>Mattel Inc. v. Walking Mountain Prods.</u>, 353 F.3d 792, 810 n. 19 (9th Cir. 2003). While courts analyze each of the eight factors, "[t]he test is a fluid one and the plaintiff need not satisfy every factor, provided that strong showings are made with respect to some of them." <u>Surfvivor Media, Inc. v. Survivor Prods.</u>, 406 F.3d 625, 631 (9th Cir. 2005). The importance of any one factor will vary case by case, and a court may reach a conclusion of confusion by only considering a subset of the factors. <u>Brookfield Commc'ns, Inc. v. West Coast Entm't Corp.</u>, 174 F.3d 1036, 1054 (9th Cir. 1999).

Here, the Court finds Plaintiff has made a "strong showing" with respect to six of the eight <u>Sleekcraft</u> factors. Regarding the first factor, Plaintiff shows it's trademark/trade name is strong. Plaintiff has continuously used, since its incorporation in 1983 to present, the trademark/trade name - Telegu Association

16

of Southern California, and has never abandoned it or shown an intention to abandon it.  Banda Decl. ¶ 2. Plaintiff has advertised and used its trademark/trade name since at least 2002, by way of plaintiff's website and advertising fliers.  Mot. 4:15-17; SAC ¶ 8; Banda Decl. ¶ 3.  Plaintiff has promoted itself and its services throughout different regions of the United States, including via the Telegu Association of North America ("TANA"), a national organization addressing the needs of the Telegu community.  SAC ¶ 10. Furthermore, Plaintiff argues that since 1983, Plaintiff's membership has increased by over forty percent to date, as a result of Plaintiff's advertisement and use of its trademark/trade name. Mot. 4:17-19; Banda Decl. ¶ 3.

Regarding the second factor, the proximity of services, this Court finds Plaintiff shows such proximity exists here.  Defendant provides charitable services, namely, promoting public awareness of the Telegu language and culture, and organizing and hosting events for cultural and educational purposes.  SAC ¶ 12.  Plaintiff also provides these types of services. Id. at ¶ 8.  This Court finds Defendant's use of Plaintiff's trademark / trade name would likely cause consumers confusion between Defendant's website and services and Plaintiff's.

The third Sleekcraft factor considers whether the marks are identical.  Here, the Court finds the marks

are identical.  Since about February 2014, Defendant
has been using Plaintiff's trademark/trade name,
without variation of the mark.  Banda Decl. ¶ 6.
Defendant's website copies the "look and feel" of
Plaintiff's website.  SAC at ¶ 12; <u>See</u> SAC Exs. 6, 17,
40.  Defendant appears to have copied Plaintiff's
trademark/trade name.  Furthermore, Defendant uses an
identical trade name on its website's banner.  <u>Id.</u> at
¶¶ 12, 15, 18; Banda Decl. ¶ 7.  Defendant's website
also uses graphics in its banner that are identical to
Plaintiff's website banner.  Mot. 5:11-12.

     In regards to the fourth <u>Sleekcraft</u> factor, the
Court finds that actual confusion has occurred.
Plaintiff claims, and Defendant fails to refute, that
"[a]bout 50 members of [P]laintiff's organization have
reportedly gone to [D]efendant's website, believing the
website to be that of P[]laintiff."  Banda Decl. ¶ 10.
The fifth <u>Sleekcraft</u> factor considers the marketing
channels used.  This Court finds that both Plaintiff
and Defendant use the same marketing channels, i.e.
websites, to promote their services to the Telegu
community.  SAC ¶¶ 10, 12.

     The seventh <u>Sleekcraft</u> factor addresses the
defendant's intent in selecting the mark.  This Court
finds Defendant was aware of Plaintiff's trademark /
trade name and nonetheless intentionally used
Plaintiff's trademark/trade name.  Defendant
organization's President was formerly the President of

18

Plaintiff organization, during the year immediately
preceding Defendant's founding in February 2014.  Mot.
5:1-3; Banda Decl. ¶ 8.  This indicates that Defendant
was well aware of Plaintiff's trademark/trade name.
Mot. 5:3-4.  Plaintiff alleges that Defendant was aware
of Plaintiff's website.  Id. at 5:4-5.  Additionally,
Defendant amended its articles of incorporation to make
Defendant's corporate name identical (not just similar)
to Plaintiff's trademark/trade name, which further
indicates Defendant's improper intent to benefit from
its infringing use of Plaintiff's trademark/trade name.
See SAC Ex. 11.

    This Court finds Plaintiff has made a strong
showing on six of the eight Sleekcraft factors, and
accordingly has asserted a meritorious claim for
federal trademark infringement.  Plaintiff is likely to
succeed on the merits of this claim.

> ii.  *Plaintiff has asserted a meritorious*
> *claim for Common Law Trade Name*
> *Infringement.*

    Plaintiff brings a common law trade name
infringement claim against Defendant, pursuant to 15
U.S.C. § 1125(a).  Mot. 1:28.  To prevail on its common
law trade name infringement claim, Plaintiff must show
that (1) it has a valid, protectable trademark or trade
name, and (2) Defendant's use of the mark is likely to
cause confusion.  Applied Info. Scis. Corp. v. eBAY,
Inc., 511 F.3d 966, 969 (9th Cir. 2007).  "As a

19

practical matter, courts are rarely called upon to
distinguish between trade names, trademarks, and
service marks.  Trade names often function as
trademarks or service marks as well." <u>Accuride Int'l
v. Accuride Corp.</u>, 871 F.2d 1531, 1534-35 (9th Cir.
1989).  There are three ways in which Plaintiff can
establish it has a protectable interest: (1) it has a
federally registered trademark in goods or services;
(2) its mark is descriptive but has acquired a
secondary meaning in the market; or (3) it has a
suggestive mark, which is inherently distinctive and
protectable.  <u>Id.</u> at 970.  Registration of a mark "on
the Principal Register in the Patent and Trademark
Office constitutes prima facie evidence of the validity
of the registered mark and of [the registrant's]
exclusive right to use the mark on the goods and
services specified in the registration." <u>Brookfield
Commc'ns, Inc.</u>, 174 F.3d at 1047.

    Here, Plaintiff has registered the trade name
"TELEGU ASSOCIATION OF SOUTHERN CALIFORNIA" with the
United States Patent and Trademark Office. <u>See</u> SAC.
Ex. 1, ECF No. 72-1.  Thus, Plaintiff has made a prima
facie showing that it holds a valid, protectable
interest in the use of the trade name "TELEGU
ASSOCIATION OF SOUTHERN CALIFORNIA," in connection with
organizing and hosting events for cultural and
education al purposes.  <u>Id.</u>  Thus, this Court finds
Plaintiff is likely to succeed on the merits of this

claim.

iii.    *Plaintiff has asserted a meritorious claim for False Designation of Origin and Common Law Unfair Competition.*

The elements to establish the claims of false designation of origin, unfair competition, and trademark infringement are "identical." New West Corp. v. NYM Co., 595 F.2d 1194, 1201 (9th Cir. 1979).  Thus, as this Court finds Plaintiff has asserted a meritorious claim for trademark infringement, this Court similarly finds Plaintiff is likely to succeed on the merits of its false designation of origin claim and its common law unfair competition claim.

iv. *Plaintiff has asserted a meritorious claim for California Statutory Unfair Competition.*

California Business and Professions Code § 17200 defines unfair competition as "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising."  BPC § 17200.  The Ninth Circuit "has consistently held that state common law claims of unfair competition and actions pursuant to California Business and Professions Code § 17200 are 'substantially congruent' to claims made under the Lanham Act." Shingle Springs Band of Miwok Indians v. Caballero, 630 Fed. Appx. 708, 711 fn 2 (9th Cir. 2015); See also Jada Toys, Inc. v. Mattel,

Inc., 518 F.3d 628, 632 (9th Cir. 2008) (finding that California state law trademark infringement claims are subject to same test as federal claims under the Lanham Act). As this Court finds Plaintiff has asserted a meritorious claim for trademark infringement, this Court similarly finds Plaintiff has established its claim for unfair competition under California Business and Professions Code § 17200.

In sum, as this Court finds Plaintiff has sufficiently alleged all of its claims in its Complaint, and Plaintiff is likely to succeed on the merits of its claims, this Court finds the second and third *Eitel* factors weigh in favor of default judgment.

c.   *The sum of money at stake in the action.*

"Under the fourth *Eitel* factor, 'the court must consider the amount of money at stake in relation to the seriousness of Defendant's conduct.'" *Tate*, 2015 U.S. Dist. LEXIS 3607 at *10 (quoting *PepsiCo, Inc. v. California Sec. Cans*, 238 F.Supp.2d 1172, 1176 (C.D. Cal. 2002)).

Under the Lanham Act, the Court has the power to grant injunctions according to the rules of equity, and on such terms as the court deems reasonable, to prevent the violation of a mark holder's rights. *Truong*, 2007 WL 1545173 at *19; *See also* 15 U.S.C. § 1116(a). A plaintiff is not entitled to an injunction as a matter of course, but where a mark holder demonstrates ongoing infringement of its marks, an injunction is

appropriate.  <u>Truong</u>, 2007 WL 1545173 at *19. "Injunctive relief is the remedy of choice for trademark infringement and unfair competition cases, since there is no adequate remedy at law for the injury caused by a defendant's continuing infringement." <u>Century 21 Real Estate Corp. v. Sandlin</u>, 846 F.2d 1175, 1180 (9th Cir. 1988).

Here, Plaintiff has abandoned its claim for damages and instead seeks a permanent injunction against Defendant.  Mot. 8:13-9:2.  Plaintiff seeks to enjoin Defendant, its officers, directors, agents, employees, representatives, and all persons acting in concert or privity with any of them from: (1) Using in any manner Plaintiff's trademark/trade name or any other names or marks that so resemble Plaintiff's trademark / trade name as to be likely to cause confusion, deception or mistake; and (2) Committing or contributing to any acts calculated to cause consumers to believe that any services that are not Plaintiff's are those provided under the control or supervision of Plaintiff, or are sponsored or approved or connected with, guaranteed by, or produced under the control of supervision of Plaintiff.  <u>Id.</u> at 9:1-12.

As Plaintiff has established that Defendant's use of Defendant's website is likely to cause confusion, this Court enters a permanent injunction against Defendant as requested by Plaintiff.  Without entry of a permanent injunction, Plaintiff will be exposed to

23

the risk of continuing irreparable harm.  See PepsiCo, 238 F.Supp.2d at 1177 (finding this Eitel favor weighs in favor of grating default judgment when a Plaintiff is not seeking monetary damages, but rather injunctive relief, against Defendant's continued infringing use of their trademarks).  This Court finds this factor weighs in favor of default judgment, and enters a permanent injunction as requested.

> d.  *The possibility of a dispute concerning the material facts.*

This Court finds it is not clear there would be any genuine dispute of material fact in the present case, as Defendant has not obtained replacement counsel or properly answered Plaintiff's SAC or present Motion. "Upon entry of default, the well-pleaded allegations in the complaint are taken as true, except those relating to damages."  Tate, 2015 U.S. Dist. LEXIS 3607 at *12 (citing TeleVideo Sys., Inc. v. Heidenthal, 826 F.2d 915, 917-918 (9th Cir. 1987)).  "In addition, '[t]he district court is not required to make detailed findings of fact.'"  Id. (citing Fair Housing of Marin v. Combs, 285 F.3d 899, 908 (9th Cir. 2002)).  In Tate, the district court found: "Since defendant never answered or otherwise appeared in this action, it is unclear whether there would be any genuine dispute of material facts."  Id.  As in Tate, this Court similarly finds no impediment to entry of default judgment against Defendant.

e.   *Whether Defendant's default was the product of excusable neglect.*

"Excusable neglect is an equitable concept that takes account of factors such as 'prejudice . . ., the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith.'"   <u>Tate</u>, 2015 U.S. Dist. LEXIS 3607 at *12 (quoting <u>Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. Partnership</u>, 507 U.S. 380, 395 (1993)).   As Defendant has not responded or otherwise obtained replacement counsel in this action, there is no evidence before this Court that Defendant's default is the product of excusable neglect.   Such failure to respond, obtain replacement counsel, and/or appear favors default judgment.

f.   *The strong public policy favoring decisions on the merits.*

Although there is a strong policy underlying the Federal Rules of Civil Procedure, which favors decisions on the merits "whenever reasonably possible," <u>Tate</u>, 2015 U.S. Dist. LEXIS 3607 at *13 (quoting <u>Eitel</u>, 782 F.2d at 1427), "'this preference, standing alone, is not dispositive.'"   <u>Id.</u> (quoting <u>Kloepping v. Fireman's Fund</u>, 1996 U.S. Dist. LEXIS 1786 (N.D. Cal. 1996)).   In deciding to grant default judgment, the <u>Tate</u> court noted: "Defendant's failure to answer the

Complaint makes a decision on the merits impractical, if not impossible." Id. (citing PepsiCo, Inc. v. California Sec. Cans, 238 F.Supp.2d 1172, 1177 (C.D. Cal. 2002)). "Under Fed. R. Civ. P. 55(b), termination of a case before hearing the merits is allowed whenever a defendant fails to defend an action." Id. Furthermore, because Defendant participated in this case before abandoning their defense, this factor weighs in favor of entering a default judgment against Defendant. See Stanley Black & Decker, Inc. v. D&L Elite Investments, LLC, 2014 WL 3738327 at *14 (N.D. Cal. 2014).

In the present case, Defendant has similarly made it impractical to decide the matter on the merits. In fact, no adjudication of the substantive claims can occur because Defendant has not obtained proper replacement counsel, in spite of this Court's order to do so. Because all Eitel factors weigh in favor of default judgment, this Court **GRANTS** Plaintiff's Motion for Default Judgment [140] against Defendant, and accordingly permanently enjoins Defendant from further infringement of Plaintiffs' trademark / trade name.

//
//
//
//
//
//

### III.   CONCLUSION

This Court **GRANTS** Plaintiff's Motion for Default Judgment.   Additionally, this Court **GRANTS** Plaintiff's request for entry of a permanent injunction against Defendant.

**IT IS SO ORDERED.**

DATED: April 20, 2016      s/ RONALD S.W. LEW
                           **HONORABLE RONALD S.W. LEW**
                           Senior U.S. District Judge

27